UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| BRYAN BICE, | ) |
| Appellant, | ) |
| vs. | ) CV-01-PT-509-NE |
| SHERMAN INTERNATIONAL CORPORATION, | ) |
| Appellee. | ) |

ENTERED
APR 17 2001

## MEMORANDUM OPINION

This is an appeal, pursuant to 11 U.S.C. § 523(a)(2)(A) and Bankruptcy Rule 8001, from the judgment and decision of the United States Bankruptcy Court for the Northern District of Alabama (Case No. 00-81447-JAC-7, Chapter 7).

### FACTS

The appellant was the president and controlling stockholder of Bice Corporation and Christheone, Inc., Alabama domestic corporations engaged in the business of residential and commercial construction. Bice Corporation maintained a credit account with appellee Sherman International Corporation ("appellee"), for which he was the signed guarantor. During May, June, and July of 1998, the appellant purchased concrete construction materials from the appellee, using the Bice Corporation account. The materials were not used by the Bice Corporation, but, instead, were used on two construction projects of Christheone, Inc. Eventually, the Bice Corporation account became delinquent and the appellee closed its credit account.

Bice Corporation filed for Chapter 7 bankruptcy in the Northern District of Alabama on September 4, 1998. On January 11, 1999, the appellee filed suit against appellant and Christheone, Inc., for breach of contract, unjust enrichment, and fraud in the Circuit Court of Madison County, Alabama. Both defendants failed to answer the summons and complaint.[1] On January 4, 2000, the Circuit Court of Madison County entered a default judgment for breach of contract, unjust enrichment, and fraud, against appellant and Christheone, Inc., jointly and severally. The judgment totaled $98,676.23, including compensatory and punitive damages.

On April 7, 2000, appellant and his wife filed a Chapter 7 bankruptcy petition in the Northern District of Alabama. Appellee filed an adversary proceeding against appellant on July 25, 2000, under 11 U.S.C. § 523(a)(2)(A), seeking to have the state Circuit Court judgment declared non-dischargeable. During the dischargeability proceedings, appellee moved for summary judgment. The bankruptcy court granted the motion, finding that the state court default judgment should be given collateral estoppel effect in the federal dischargeability proceedings, and awarded the appellee $98,676.23. The appellant subsequently appealed to this court.

## THE STATE COURT JUDGMENT

The Circuit Court of Madison County found, "upon application of [Sherman International] and a review of the evidence presented," in pertinent part, that:

> "A. . . . Bryan Bice is individually indebted to Sherman International Corporation, Inc., under his written personal guarantee . . . .

---

[1] Appellant claims that his failure to answer the complaint stemmed from the fact that, at that point, he was receiving so many demand letters and complaints from other creditors that he simply placed them in a "big stack" until he decided that he was ready to take them to an attorney. The appellant claims that, at the time, he could not afford to pay for legal advice, and did not understand that he was being sued for fraud.

2

B. ... Christheone, Inc., was ... owned and operated by Bryan Bice and ... used the accounts of Bice Corporation prior to Bice Corporation's bankruptcy without the knowledge and consent of Sherman International Corporation, Inc. Christheone received the benefit of the materials ... without incurring the corresponding liabilities and payments, and thus has been unjustly enriched . . . .

C. The ... scheme of purchasing materials for one corporation on the accounts of another corporation owned by the same principals without disclosure of the true and intended nature of the purchases nor the true corporation liable for said purchases, without payment for the materials, and with knowledge by the principals of the financial insolvency of the second corporation constitutes actionable fraud under Alabama law, and that Bryan Bice ... committed fraud upon Sherman International Corporation . . . .

D. [Sherman] is entitled to a judgment for breach of contract, unjust enrichment and fraud, jointly and severally, against Bryan Bice . . . ."

## THE BANKRUPTCY COURT

When appellee moved for summary judgment on its claim of non-dischargeability, the bankruptcy court conducted a hearing at which the bankruptcy judge granted the appellee's motion for summary judgment.[2] The court concluded that collateral estoppel foreclosed the appellant from re-litigating the default judgment of fraud, and that, because the debt at issue was obtained through fraud, it was not dischargeable in bankruptcy. It relied, first, upon the state circuit court judge's specific findings of fact that appear in the default judgment document. It also decided that, were it to allow the dischargeability issue to be tried, "[u]nder the federal standards, we would be retrying fraud again . . . ." Transcript, p. 28. The bankruptcy court relied primarily on McDonald v. U.S. Die Casting & Development Co., 628 So. 2d 433 (Ala. 1993), In re Wald, 208 B.R. 516 (Bankr. N.D. Ala. 1997), and Bush v. Balfour Beatty Bahamas, Ltd., 62 F.3d 1319 (11th Cir. 1995).

---

[2] The hearing transcript was filed in the bankruptcy court, and, thus, became part of the record in this case, on February 20, 2001.

3

## STANDARD

According to the Eleventh Circuit, "It is axiomatic that a bankruptcy court deciding a summary judgment motion, just like a district court, must determine whether there are any genuine issues of material fact." In re Optical Technologies, Inc., __ F.3d __, *2, 2001 WL 336037 (11th Cir. 2001). The court may grant summary judgment only after it has 1) determined that there were no issues of material fact, (2) accepted all undisputed factual allegations as true, and (3) found that summary judgment was warranted as a matter of law, using the correct legal standard. Carey Lumber Co. v. Bell, 615 F.2d 370, 378 (11th Cir.1980) (per curiam). This court reviews the bankruptcy court's summary judgment decision *de novo*. Optical Technologies, 2001 WL 336037 at *2.

## ARGUMENT AND ANALYSIS

The appellant initially argues that, when determining whether the state court default judgment should be given collateral estoppel effect in the bankruptcy proceeding, the judge should have applied federal law rather than state law. The plaintiff relies upon Brown v. Felsen, 442 U.S. 127 (1979) which, he claims, requires bankruptcy courts to apply federal law to determine the preclusive effect of a state court judgment. In Brown, the Supreme Court held that a bankruptcy court is not confined to simply reviewing the judgment and record in a prior state court proceeding when considering dischargeability of a debt. Id. at 138-139. The Court specifically decided that the doctrine of res judicata could not be used to prevent the creditor from presenting evidence of the debtor's fraudulent conduct, and, thus, the nondischargeability of a state court judgment for the creditor, simply because the creditor had the opportunity to litigate the issue of fraud in the state court proceeding, but chose, instead, to settle the case through a general stipulation of liability and judgment. Id. at 128-129. The high Court's reasons

for refusing to apply res judicata to the judgment were numerous. First, it concluded that allowing the debtor to assert the new "defense of bankruptcy," which could not have been litigated and determined in the state proceeding, but not giving the creditor the opportunity to refute that defense, would "upset the repose that would justify treating the prior state court proceeding as final, and . . . would hardly promote confidence in judgments . . . ." Id. at 134. Furthermore, foreclosing the creditor's opportunity to prove facts establishing nondischargeability because the creditor chose not to prove them by bringing a certain cause of action in a prior state proceeding "would force an otherwise unwilling party to try [nondischargeability issues] to the hilt in order to protect himself against the mere possibility that a debtor might take bankruptcy in the future." Id. at 135. Finally, the Court noted that Congressional intent decisively favored the litigation of nondischargeability questions before a bankruptcy court because of its expertise in handling them. Id. at 136. The Court explained that "[w]hile Congress did not expressly confront the problem created by prebankruptcy state-court adjudications, it would be inconsistent with the philosophy of the 1970 amendments to adopt a policy of res judicata which takes these [dischargeability] questions away from bankruptcy courts and forces them back into state courts." Id.

It is significant to note that the Brown Court addressed itself only to the narrow issue of the application of res judicata to prior state proceedings, in which issues implicating possible nondischargeability could have been-- but were not-- litigated. The opinion specifically admonishes the reader that "[t]his case concerns res judicata only, and not the narrower principle of collateral estoppel. . . . [W]e need not and therefore do not decide whether a bankruptcy court adjudicating a [dischargeability] question should give collateral estoppel effect to a prior state judgment." Id. at n. 10.

5

It would, at this point, be helpful to review the difference between res judicata and collateral estoppel. The doctrine of res judicata ensures the finality of a prior decision by foreclosing the litigation, in a subsequent proceeding between the same parties or those in privity with the parties, of "all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." Id. at 131 (citing Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 378 (1940)). Collateral estoppel, also known as issue preclusion, on the other hand, "bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a 'full and fair opportunity' to litigate that issue in an earlier case." St. Laurent v. Ambrose, 991 F.2d 672, 675 (11th Cir. 1993).[3] While res judicata ensures the finality of a prior decision by forcing parties to assert all available grounds of recovery and defense in the initial proceeding, collateral estoppel, theoretically, preserves the integrity of an already-rendered judgment from an attack outside of the normal appeals process. The Brown court stated, with regard to collateral estoppel, that "[i]f, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court." Brown, 442 U.S. at n. 10.

The application of collateral estoppel to an issue that was decided in a prior state court proceeding, to bar relitigation of that issue in the bankruptcy court, does not implicate the same concerns that the Brown court expressed about using res judicata to prevent a creditor from

---

[3] The specific requirements for asserting and establishing collateral estoppel and res judicata differ across the federal system and the individual states' systems. The foregoing explanation is intended only to provide the general concepts.

refuting a debtor's dischargeability claim with evidence supporting a dischargeability exception that could have been pled as a cause of action in the prior proceeding. First, because collateral estoppel applies only to issues previously litigated and determined, it does not prevent the creditor from availing himself of a possible defense to the debtor's bankruptcy dischargeability claim simply because he did not raise it in the prior proceeding. Second, it does not encourage the parties to prematurely litigate claims "to the hilt," unnecessarily, out of fear that the non-prevailing party may later try to discharge the judgment through bankruptcy. Finally, while it does operate to remove some dischargeability issues from the expertise of the bankruptcy courts, it does not <u>force</u> those issues back to the state courts by causing the parties to fear the loss of an available-but-unasserted claim or defense in bankruptcy.

In the instant case, the debate concerns, not res judicata, but collateral estoppel. Because, according to its own language, <u>Brown</u> does not apply to this situation, the appellant's reliance upon it is misplaced.

Collateral estoppel may be used to bar the relitigation in the bankruptcy court of an issue that was already determined in a prior federal or state proceeding. <u>Marrese v. American Academy of Orthopaedic Surgeons</u>, 470 U.S. 373, 380 (1985). Pursuant to the full faith and credit statute, 28 U.S.C. § 1738, state court judgments "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." <u>Id.</u> The appellant argues that, when deciding the amount of preclusive effect to give to a state court default judgment, the bankruptcy court should consider and apply "federal law rather than [the] collateral estoppel law of [the] state in which the judgment was entered." The appellant relies, however, on <u>Brown v. Felsen</u>, which, as discussed at length, *supra*, specifically purports to decide only the applicability of res judicata to

issues before the bankruptcy court that could have been raised in a prior state proceeding. In fact, contrary to the appellant's argument, "federal law" requires the bankruptcy court to look to the law of the state in which the judgment was rendered and to give the judgment the same level of preclusive effect that it would receive from that state. Marrese, 470 U.S. at 380 (citing Kremer v. Chemical Construction Corp., 456 U.S. 461, 481-482 (1982)).

The preclusion test set out in Marrese begins with an analysis of the preclusive effect of a state court judgment under the law of the rendering state. Id. at 381. If the state's law would indeed bar relitigation of an issue decided in the earlier proceeding, the court is then to determine whether an exception to § 1738 exists that would allow it to hear the issue. Id. at 386. To the extent, however, that the state's preclusion law allows relitigation of an issue decided in an earlier judgment, the federal court in the subsequent proceeding may follow that law. Id. at 382. That the federal court is required to apply state law collateral estoppel principles to prior state court judgments, is clear from the Marrese holding, as well as that of Kremer, 456 U.S. at 481-482, and St. Laurent, 991 F.2d at 676 ("If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect.")(emphasis added).

Appellee argues that "collateral estoppel should apply if the facts supporting the prior state court's decision are discernable from the record . . . .," citing In re Dennis, 25 F.3d 274 (5th Cir. 1994); In re Shuler, 722 F.2d 1253 (5th Cir. 1994); and In re Davis, 3 F.3d 113 (5th Cir. 1993). Regardless of whether these cases stand for the appellee's proposition, the above proposition does not comport with the law of this circuit. See St. Laurent, 991 F.2d at 675-676. The court's analysis in St. Laurent, which, so far, has not been discredited, provides the analytical framework for the preclusive effect of state court judgments in the Eleventh Circuit.

See Balfour Beatty, 62 F.3d at n. 6 ("Another panel of this court has stated that the collateral estoppel law of the state rendering the judgment must be applied in a dischargeability proceeding . . . . we do not reach the issue . . . ."). For this reason, the case of Balfour Beatty, in which the Eleventh Circuit held that a default judgment rendered by a federal district court could, pursuant to federal law, collaterally estop the non-prevailing party from relitigating in bankruptcy issues already determined by the default judgment, is inapposite to this case. See 62 F.3d at 1321, 1322-1323. That a federal law, under certain circumstances, gives a federal default judgment preclusive effect in federal court, does not affect this court's analysis here, according to Marrese and St. Laurent.

The judgment in the instant case is an Alabama default judgment. Pursuant to Marrese and St. Laurent, the court is to look to Alabama law to determine the preclusive effect that such a judgment would be given in Alabama. Under Alabama law, collateral estoppel bars relitigation of an issue if: (1) the issue involved in the prior proceeding was identical to the issue involved in the present proceeding; (2) the issue was "actually litigated" in the prior proceeding; (3) the resolution of the issue was necessary to the prior judgment; and (4) the parties in the present proceeding are the same as those involved in the prior proceeding. In re Wald, 208 B.R. 516, 529 (Bankr. N.D. Ala. 1997)(citing Lott v. Toomey, 477 So. 2d 316, 319 (Ala. 1985)). In this case, the issue before the bankruptcy court was whether fraud foreclosed the dischargeability of the appellant's debt. Because the dischargeability issue turned on the finding of fraud, which the appellant sought to litigate before the bankruptcy court, and which the appellee initially attempted to litigate before the state court, the determinative issues before both courts were the same: whether the appellant's actions constituted fraud. Because the appellee sued the appellant for fraud, as a cause of action in the state court, resolution of the fraud issue was indeed

necessary to the prior judgment. The parties in the present proceeding are the same as those in the prior proceeding.

The critical inquiry, therefore, is whether the issue of fraud, determined in the form of a default judgment, rendered after the appellant apparently made absolutely no response to the proceeding against him, was "actually litigated" in the prior proceeding. Bankruptcy court opinions have suggested that, under Alabama preclusion law, a default judgment would not fulfill the "actually litigated" requirement. Wald, 208 B.R. at 529; In re Cornner, 191 B.R. 199, n. 3 (Bankr. N.D. Ala. 1995)("In Alabama, it is doubtful that a default judgment has any collateral estoppel effect."); In re Booth, 174 B.R. 619, 623 (Bankr. N.D. Ala. 1994)("The law in Alabama is that neither a consent judgment nor a default judgment can satisfy the 'actually litigated' element.").[4]

The bankruptcy courts' conclusions find support in Alabama case law. In AAA Equipment & Rental, Inc. v. Bailey, 384 So. 2d 107, 111 (Ala. 1980), the Alabama Supreme Court stated that the difference between claim preclusion (res judicata) and issue preclusion (collateral estoppel) lay in the fact that "[i]n the former, a judgment on the merits is an absolute bar to a subsequent prosecution of such a claim or demand, while in the latter the prior judgment operates as an estoppel only to those matters in issue or questions controverted and determined." (emphasis added). Later in the opinion, when the court discussed its decision in Wheeler v. First

---

[4] The parties create "much ado" about the Wald court's use of the phrase "simple default judgment." See Wald, 208 B.R. at 529, 561. The appellee argues at length, that, because the state court made specific findings of fact based on evidence that the appellee presented to it, the default judgment in the instant case is anything but simple. The bankruptcy court agreed with the appellee, and used Wald to distinguish the default judgment in the instant case from the default judgment in Wald. However, the bankruptcy court in Wald likely was not using the word "simple" to distinguish one default judgment from another, but, instead, was using the word "simple" to distinguish the entire class of default judgments from other judgments that have been rendered after even the most cursory of adversarial proceedings.

10

Alabama Bank of Birmingham, Ala., 634 So. 2d 1190, 1199 (1978), in which it set out the requirements for collateral estoppel, it clarified the "actually litigated" requirement: "In the first suit that issue was <u>actually litigated, that is, the judgment rendered in it was not based upon default, stipulation, or consent</u>."[5] AAA Equipment, 384 So. 2d at 112. It also cited Matter of McMillian, 579 F.2d 289 (3rd Cir. 1978) for the proposition that "issues involved in an action terminated by default judgment [are] not 'actually litigated' for purpose of collateral estoppel." AAA Equipment, 384 So. 2d at 112. Much earlier, in Barnett v. Pinkston, 191 So. 371, 374 (Ala. 1939), the Court concluded that: "where the subject matter in one suit is different from that in the second, between the same parties, a judgment in the former based upon default or decree pro confesso does not estop the parties in the second suit from contesting any issue in the former suit where the subject matters are different in the two suits; in order to constitute res adjudicata [sic], the issues in the second suit must have been <u>contested and actually litigated</u> in the former."[6] (emphasis added). Finally, the Alabama Supreme Court in Crowder v. Red Mountain Mining Co., 29 So. 847, 849-850 (Ala. 1900), refusing to give preclusive effect to a default judgment in a subsequent suit, stated that: "The judgment in the former suit <u>being by default, no contest was had, and consequently no issues were litigated</u>. This being true, the judgment pleaded could not operate as a bar or as an estoppel in the second suit."

---

[5] The court notes that this case suggests that, under Alabama law, not even a consent judgment is sufficient for collateral estoppel purposes. That a consent judgment, which requires at least a modicum of participation in the proceedings by the defendant, would not suffice for collateral estoppel bolsters the argument that a default judgment, usually rendered without the defendant's participation in the proceedings, has no collaterally preclusive effect in subsequent proceedings.

[6] Although the Alabama Supreme Court referred to the doctrine as "res judicata" instead of "collateral estoppel," the reference likely uses the broad preclusion label of "res judicata" to describe collateral estoppel, a narrower subset of preclusion doctrine. The situation that the Supreme Court describes is a situation in which, today, the doctrine of collateral estoppel, not that of res judicata, would be invoked.

11

The language in the foregoing opinions appears to require that, in order to be considered "actually litigated," the issue must, first, be "contested" or "controverted," and, then, "litigated" and "decided." The <u>AAA Equipment</u> Court specifically defined "actually litigated" in terms of the absence of default, consent, or stipulation. 384 So. 2d at 112. In the instant case, it is undisputed that the appellant, while served with the summons and complaint, failed to appear in the case to defend himself. He did not file an answer. He did not "contest," "controvert," or "litigate" any of the appellee's allegations against him. While the appellee presented evidence to the state circuit court in order to obtain the default judgment, and the court made specific findings of fact based upon that evidence, the fact still remains that the evidence was uncontested, and the fraud issue was not litigated. According to the Alabama Supreme Court, the appellee's method of obtaining the judgment of fraud falls short of the requirement that the fraud issue be actually litigated such that the eventual judgment would have preclusive effect in a subsequent proceeding.[7]

The bankruptcy court also relied upon <u>McDonald v. U.S. Die Casting & Development Co.</u>, 628 So. 2d 433 (Ala. 1993). There are four separate opinions in the <u>McDonald</u> litigation, all with the same caption; the bankruptcy court used the most recent opinion. In that particular opinion, the Alabama Supreme Court affirmed the trial court's grant of summary judgment to the

---

[7] The appellee appears to find significance, not only in the fact that the state court made specific findings of fact in the default judgment, but also in the allegation that, at the time he received the summons and complaint, the appellant "had access to counsel." The court is not entirely sure what the appellee means by "access to counsel"; theoretically, everyone has or should have "access to counsel" simply by retaining an attorney whose name he may choose at random from a telephone directory. The appellant argues that, at the time he received the summons and complaint, he did not have "access to counsel" because he could not afford it. Regardless of what constitutes "access to counsel," Alabama law does not require that the appellant have had "access to counsel" when the default judgment was obtained, in order to give the judgment preclusive effect; nor will it "tip the scales" in the appellee's favor where the law calls for a different result. The same may be said for the specific findings of fact itemized on the face of the default judgment. Alabama law does not weigh the specificity of the default judgment when determining its collaterally preclusive effect.

defendants based on "res judicata." Id., 628 So. 2d at 433.

Because the procedural history of this case is so twisted, it would be best to start at the beginning of the litigation. In the first McDonald case, the plaintiff, John McDonald sued his former employer for breach of a stock purchase agreement, termination in breach of the employment contract, fraud in the sale of stock, improper payment of dividends to a third party, and failure to pay moving expenses. 541 So. 2d 1064, 1065-1066. The trial court entered summary judgment against him on all counts except those for the claims for termination in breach of the employment contract and for the moving expenses. Id. at 1066. The remainder of the opinion is irrelevant to the issues before this court.

In the next McDonald opinion, found at 585 So. 2d 853 (Ala. 1991), the Alabama Supreme Court reversed the trial court's grant of summary judgment to the defendants on the termination in breach of the employment contract claim and affirmed the grant of summary judgment to the defendants on the relocation expenses claim. 585 So. 2d at 856-857. The court found that the defendants had not made a prima facie showing that no genuine issue of material fact existed. Id. at 855-856.

However, between the time that the trial court disposed of the employment contract claim on summary judgment and the time that the Alabama Supreme Court reversed the disposition, a counterclaim that the defendants had pled against McDonald for breach of the employment contract, conversion of company materials, and conversion of a company car, was set for trial. 612 So. 2d 1161, 1161 (Ala. 1992). McDonald moved for a continuance of the trial until the Alabama Supreme Court could examine the trial court's grant of summary judgment on his claim for breach of the employment contract and for moving expenses. Id. The trial court denied the motion; the Alabama Supreme Court, subsequently, denied McDonald's petition for

mandamus to force the trial court to grant the continuance. Id. Although he did not receive his requested continuance, McDonald still did not participate in the trial on the merits of the employer's claim for breach of contract and conversion. Id. The trial court entered a default judgment against him on the breach of contract and conversion issues. Id. Specifically, the court held that McDonald had breached his employment contract with the defendant. Id. When McDonald appealed to the Alabama Supreme Court, the Court held that the trial court had not abused its discretion in entering the default judgment. Id.

The final opinion, cited by the bankruptcy court in the instant case, reviewed the trial court's grant of summary judgment to the defendant after McDonald's breach of contract claim was remanded. 628 So. 2d at 433. The trial court had found that because it had already determined, in the default judgment, that McDonald had breached the employment contract, and because the contract itself allowed the defendant to discharge an employee who, himself, had breached the employment contract, the defendant's discharging McDonald did not breach the employment contract. Id. at 433-434. The trial court granted summary judgment for the defendant based on a theory that the Alabama Supreme Court termed "res judicata," but which, upon description, suggests collateral estoppel. Id. The Court affirmed the disposition, stating that "[i]t is well settled that once an issue has been litigated and a final judgment has been entered on the merits, any further litigation of that issue by the same parties is barred." Id.

The default judgment in McDonald is distinguishable from the default judgment in the instant case. First, the parties in McDonald had been embroiled in litigation for, at the very least, three years before the default judgment was entered. The plaintiff had filed the case in 1989, and the Supreme Court reviewed the grant of the default judgment in 1992. During that time, the parties already had litigated the merits of various parts of the case before the Alabama Supreme

Court twice. The parties obviously had trudged through discovery and dispositive motions on the defendant's breach of contract counterclaim, and were on the brink of trial, when McDonald, in what could only have been a disastrous tactical decision, refused to participate until the Alabama Supreme Court rendered its second opinion. The standard for "actually litigated" in Alabama is "controverted" (or "contested") and "determined." AAA Equipment, 384 So. 2d at 111. In order for the counterclaim to have reached the trial stage, McDonald must have not only contested the claim, but also participated in discovery and dispositive motions. In the case before this court, the plaintiff did not even appear in the state court proceeding. The McDonald case is more analogous to Balfour Beatty, in which the court noted that the party against whom the default judgment had been rendered had "actively participated in the prior action over an extended period of time." 62 F.3d at 1324.

## CONCLUSION

The court concludes that the bankruptcy court erred in concluding that the issue of dischargeability is barred by collateral estoppel.

This ___17th___ day of April, 2001,

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**